Robbins Motor v. US Sea Launch        CV-01-191-B      10/11/01

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Robbins Motor**
**Transportation, Inc.**

    **v.**                                      Civil No. C-01-191-B
                                            Opinion No. 2001DNH188
**United States Sea Launch**
**Limited Partnership**


### MEMORANDUM AND ORDER


In this civil action, Robbins Motor Transportation, Inc.

("Robbins"), sues its customer, United States Sea Launch Limited

Partnership ("USSL"), for money due under a contract for

interstate transportation services.  See 28 U.S.C. § 1337(a)

(1994 & Supp. V 1999).  USSL has moved to dismiss Robbins' action

for lack of personal jurisdiction and venue or, in the

alternative, to transfer the case to the United States District

Court for the Central District of California.  For the following

reasons, I deny USSL's motion.

## I.  BACKGROUND

Robbins, a Pennsylvania corporation with its principal place of business in Eddystone, Pennsylvania, is an interstate motor carrier licensed and approved by the United States Department of Transportation.  USSL, a California limited partnership with its principal place of business in Long Beach, California, provides marine-based commercial satellite launch services.  USSL is not licensed to do business in New Hampshire, does not target advertising to the state, and has not consented to be sued here.

At some point in 1999, USSL contracted with Process Engineering, a New Hampshire corporation, for the manufacture of a 127,000 pound liquid nitrogen tank with external piping.  On November 5, 1999, USSL hired Robbins to transport the tank from New Hampshire to USSL's place of business in California.  Prior to shipment, Process Engineering tested the tank and found that it was undamaged and operational.  The bill of lading, issued in New Hampshire, set forth the governing terms and rates for the contract of transport.

On or about December 8, 1999, a Robbins employee arrived in New Hampshire to transport the tank.  According to Robbins, a

USSL employee was present in New Hampshire when the driver arrived to pick up the tank, and spoke with the driver about the transport. The transport of the tank required the assistance of the Rockingham County Sheriff's Department. The Sheriff's Department escorted Robbins from local New Hampshire roads to the interstate highway system. The lump sum price of the agreement between Robbins and USSL included police escort costs.

Robbins delivered the tank to USSL in California on January 7, 2000. Upon arrival, a USSL employee visually inspected the tank from ground level and thereafter signed the bill of lading, indicating that it had received the tank in good condition. On January 10, 2000, however, when the tank was loaded onto a barge, USSL employees noticed that a vacuum jacket lift plate was missing from the top of the tank. After discovering the damage, USSL retained Chart Industries, Inc. of New Hampshire, to repair the tank. USSL subsequently notified Robbins of the damage to the tank and refused to pay its freight charges, claiming that Robbins had damaged the tank and that USSL's repair costs exceeded the amount it owed under the transportation contract. Robbins sued USSL in this court for the $62,725.00 it claims to be due under the contract.

## II.  STANDARDS OF REVIEW

### A.  Personal Jurisdiction

When a defendant contests a forum court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists.  See, e.g., Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998); Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995); Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).  Because I have not held an evidentiary hearing on the question of personal jurisdiction over USSL, Robbins must make a prima facie showing that such jurisdiction exists.  See Sawtelle, 70 F.3d at 1386 n. 1.

To make such a showing, Robbins may not rest on the pleadings.  Rather, it must "adduce evidence of specific facts" that support jurisdiction, see Foster-Miller, 46 F.3d at 145; United Elec. Radio & Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993) [hereinafter Pleasant St. II], which I will take as true and construe in the light most favorable to its jurisdictional claim, see Mass. Sch. of Law, 142 F.3d at 34; Foster-Miller, 46 F.3d at 145.  I do not act as a

fact-finder; instead I must determine "whether the facts duly proffered, [when] fully credited, support the exercise of personal jurisdiction." Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997) (citing Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)).

**B.  Venue**

Authorities are split as to the proper allocation of the burden of proof in venue disputes.  The Third, Seventh, and Eighth Circuits as well as Moore's Federal Practice Treatise, take the view that a challenge to venue is in the nature of an affirmative defense which must be proved by the defendant.  See Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982); *In re* Peachtree Lane Assocs., Ltd., 150 F.3d 788, 792 (7th Cir. 1998); United States v. Orshek, 164 F.2d 741, 742 (8th Cir. 1947); 17 Moore's Federal Practice § 110.01[5][c].  A number of district courts and Wright, Miller and Cooper's Federal Practice and Procedure Treatise assert that the better view is that the plaintiff must prove venue when it has been properly challenged.  See D'Anton Jos, S.L. v. The Doll Factory, Inc., 937 F. Supp. 320, 321 (S.D.N.Y. 1996); Dunham v. Hotelera Canco S.A. de C.V., 933 F. Supp. 543, 551 (E.D. Va. 1996); Wright, Miller and Cooper,

-5-

Federal Practice and Procedure 2d § 3826.

I need not determine which party bears the burden of proof to resolve USSL's venue challenge. The historical facts that bear on the question are not in dispute and I would resolve the ultimate issue the same way regardless of how the burden of proof is allocated. Thus, I leave the resolution of the burden of proof issue for another day.

## C. **Transfer of Venue**

Motions to transfer are governed by 28 U.S.C. § 1404(a), which applies if venue is proper in the court where the action was filed, and § 1406(a), which applies when venue is improper in the original court. Here, I focus on the requirements of § 1404(a).

A district court may transfer an action to another district pursuant to § 1404(a) if two requirements are met. First, the court must determine that the action "might have been brought" in the transferee district court originally. Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). Second, the court must determine that transferring the action will enhance the convenience of the

parties and the witnesses and promote the interest of justice.
Id.

Once the first requirement is met, the district court enjoys considerable discretion in deciding whether to transfer a case. Norwood v. Kirkpatrick, 349 U.S. 29, 30, 32 (1955).  In exercising that discretion, the court should consider: (1) the convenience of the parties and witnesses; (2) the relative ease of access to documents needed for evidence; (3) the cost of procuring willing witnesses; and (4) any practical problems associated with trying the case most expeditiously and inexpensively.  Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000); F.A.I. Elecs. Corp. v. Chambers, 944 F. Supp. 77, 80-81 (D. Mass. 1996) (citation omitted).  "Of those factors, the convenience to the expected witnesses is probably the most important factor . . . ." Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc., 56 F. Supp.2d 134, 141 (D. Mass. 1999) (citation and internal quotation marks omitted).

A defendant seeking to transfer an action bears the "substantive burden" of showing that the factors "predominate" in favor of transfer.  Buckley v. McGraw-Hill, Inc., 762 F. Supp.

430, 439 (D.N.H. 1991). "The Supreme Court has held that '[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

## III. DISCUSSION

USSL argues that I should dismiss this case for lack of personal jurisdiction because USSL's contacts with New Hampshire are not sufficient to make USSL amenable to specific personal jurisdiction. USSL further contends that venue is improper because no substantial events or omissions giving rise to the claim occurred in New Hampshire. Finally, USSL makes an alternative argument that this court should transfer the case to the Central District of California. I discuss each argument in turn.

### A. Personal Jurisdiction

#### 1. New Hampshire's Long-Arm Statue

To exercise personal jurisdiction over a defendant, a district court must find sufficient contacts between the defendant and the forum state to satisfy both the state's long-

arm statute and the Fourteenth Amendment's Due Process Clause. See, e.g., Sawtelle, 70 F.3d at 1387; Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994).

The New Hampshire long-arm statute applicable to foreign corporations, see N.H. Rev. Stat. Ann. § 293-A:15-10 (Supp. 1999), has been interpreted to be coextensive with federal constitutional limits on jurisdiction, see Sawtelle, 70 F.3d at 1388 (citing McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994)). As a result, "the traditional two-part personal jurisdiction inquiry collapses into the single question of whether the constitutional requirements of due process have been met." McClary, 856 F. Supp. at 55. Therefore, I proceed directly to the due process analysis.

## 2. Constitutional Analysis: Due Process

The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)); see also Sawtelle, 70 F.3d at 1388. The

ultimate objective of the due process "minimum contacts" requirement is to ensure that the forum's exercise of personal jurisdiction over a nonresident defendant does not offend "'traditional notions of fair play and substantial justice.'" United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992) [hereinafter Pleasant St. I], (quoting Int'l Shoe, 326 U.S. at 316).  The Due Process Clause precludes a court from asserting jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The inquiry into "minimum contacts" is necessarily fact-specific, "involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case."  Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).  A defendant cannot be subjected to the forum's jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts. Burger King, 471 U.S. at 475; Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); World-Wide Volkswagen, 444 U.S.

-10-

at 299.  Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

### 3.  General and Specific Personal Jurisdiction

There are two forms of personal jurisdiction.  If a defendant maintains continuous and systematic contacts with the forum state, then the forum court has general jurisdiction.  Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).  Specific jurisdiction exists if there is "a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities."  Mass. Sch. of Law, 142 F.3d at 34.  In other words, a forum court may exercise specific jurisdiction if the plaintiff's case "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum."  Phillips Exeter Acad., 196 F.3d at 288; see also Pleasant St. I, 960 F.2d at 1088-89.

In the case at bar, Robbins argues that the court has specific personal jurisdiction over USSL.  To invoke specific

-11-

jurisdiction, Robbins must show that (1) the claim underlying the litigation directly arises out of, or relates to, USSL's forum-state activities; (2) USSL's in-state contacts represent purposeful availment of the privilege of conducting activities in New Hampshire, thereby invoking the benefits and protections of New Hampshire's laws and making USSL's involuntary presence before the state's courts foreseeable; and (3) the exercise of personal jurisdiction is reasonable. See Foster-Miller, 46 F.3d at 150 (setting forth five so-called "gestalt factors", specified infra, by which the reasonableness of an exercise of personal jurisdiction should be judged); Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712-13 (1st Cir. 1996) (similar). I turn now to the specific jurisdiction analysis.

### a. Relatedness

"In order for the extension of [specific] personal jurisdiction to survive constitutional scrutiny, a claim must arise out of, or be related to, the defendant's in-forum activities." Mass. Sch. of Law, 142 F.3d at 35 (citation and internal quotation marks omitted). USSL purchased the nitrogen tank in question from Process Engineering, a New Hampshire

corporation.  USSL then contracted with Robbins for transport of the tank from New Hampshire to California.  The bill of lading, issued in New Hampshire, set forth the governing terms and rates for the contract of transport.  Because the claim is based on unpaid fees for the transport of the tank which was purchased and shipped from New Hampshire, the "relatedness" test is easily satisfied.

### b.  Purposeful Availment

The "purposeful availment" component of the due process analysis incorporates two factors, foreseeability and voluntariness.  Ticketmaster-New York, 26 F.3d at 207.  The "foreseeability" factor requires that the defendant's "contact and connection with the forum State [be] such that he should reasonably anticipate being haled into court there."  Id. (citation and internal quotation marks omitted).  The "voluntariness" factor requires that the defendant's contacts be voluntary, and not the result of "unilateral activity of another party or a third person."  Id. at 207-08 (citation and internal quotation marks omitted).  Because USSL does not suggest that the activities Robbins points to in asserting jurisdiction were in any way involuntary or prompted by a third party, I concentrate

-13-

on the question of foreseeability.

USSL contracted with Process Engineering, a New Hampshire corporation, for the purchase of the tank. This required USSL to communicate with Process Engineering to finalize a purchase agreement bringing it into contractual privity with a New Hampshire corporation, and to arrange for shipment of the contracted-for product from New Hampshire. Moreover, USSL sent an employee to New Hampshire, and the bill of lading was issued in New Hampshire, where the tank was inspected and prepared for transport. These contacts with New Hampshire made it reasonably foreseeable that USSL could be haled into court in this judicial district.

### c. Reasonableness

Even if the plaintiff establishes relatedness and purposeful availment, a defendant may defeat jurisdiction by showing that an assertion of jurisdiction would not be "reasonable." See Ticketmaster-New York, 26 F.3d at 206. The First Circuit has set forth the following five factors, called the "gestalt factors", to assist courts in assessing reasonableness:

> (1) the defendant's burden of appearing, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Foster-Miller, 46 F.3d at 150 (citation omitted).

While the question is close, Robbins' interest in obtaining convenient and effective relief and the presence of key witnesses in this district support this court's assertion of specific personal jurisdiction over USSL. USSL's burden of litigating in this district seems reasonable when one considers that, regardless of where the case is heard, USSL would have to come to New Hampshire to depose Process Engineering's employees. Furthermore, the judicial system's interest in obtaining the most effective resolution of the controversy is served by litigating the claim in this district because non-party witnesses from Process Engineering and Chart Industries are likely to reside within the limits of this court's subpoena powers. If I were to transfer this case to the Central District California as USSL suggests, that court would lack the power to compel these witnesses to attend the trial. Therefore, Robbins could be

-15-

forced to rely on their deposition testimony.  None of the other Gestalt factors outweigh this concern.  For these reasons, I conclude that asserting personal jurisdiction over USSL would not be unreasonable.

**B.    <u>Venue</u>**

The general venue statute provides that an action may be brought in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."  28 U.S.C. § 1391(b).  When applying this provision, a court must look "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim."  <u>Uffner v. La Reunion Francaise, S.A.</u>, 244 F.3d 38, 42 (1st Cir. 2001).  Using this standard, venue may well exist in several different jurisdictions where a substantial part of the events giving rise to the claim took place.  <u>See</u> <u>First of Michigan Corp. v. Bramlet</u>, 141 F.3d 260, 263 (6th Cir. 1998).

In this case, I determine that the court has venue over this dispute for the same reasons that it has personal jurisdiction over USSL.  Accordingly, I reject USSL's venue challenge.

## C. **Transfer of Venue**

USSL contends that even if this court has personal jurisdiction over it and is a proper venue in which to litigate, I should exercise my discretion to transfer the case to the Central District of California. In support of this argument, USSL alleges that: (1) a substantial part of the events or omissions giving rise to the claim occurred in California; (2) the evidence is located there; and (3) material witnesses essential to establishing USSL's defenses reside there.

On balance, USSL has failed to demonstrate that transferring the action will enhance the convenience of the parties and witnesses and promote the interest of justice. See Van Dusen, 376 U.S. at 616. Although the tank (which itself is not likely to be introduced into evidence at trial) was unloaded and found to be damaged in California, it was manufactured, inspected, and loaded here in New Hampshire. Documents relating to the claim are easily transportable to this district, and as I previously noted, important witnesses reside here who are beyond the subpoena power of the California courts. For these reasons, I will not disturb Robbins' choice of forum. See Buckley, 762 F. Supp. at 439.

## IV.  CONCLUSION

For the foregoing reasons, I deny USSL's motion to dismiss for lack of personal jurisdiction and venue or, in the alternative, to transfer the venue to the United States District Court for the Central District of California [Doc. No. 6].

SO ORDERED.

                                   _____
                                   Paul Barbadoro
                                   Chief Judge

October 11, 2001

cc:  Robert E. Murphy, Jr., Esq.
      Michael D. Ramsdell, Esq.
      Richard P. Schweitzer, Esq.
      Leon Koutsouftikis, Esq.